Case number 22-5214. Advocate Christ Medical Center, also known as Advocate Christian Hospital et al, appellants, versus Xavier Becerra, Secretary, United States Department of Health and Human Services. Mr. Miller for the appellants. Ms. Marcus for the appellate. Mr. Miller, good morning. May we begin? May it please the Court, Daniel Miller appearing on behalf of all appellants. This case presents the question of what it means to be entitled to Supplemental Security Income Benefits under the Disproportionate Care Provisions of the Medicare Act. In 2010 rulemaking, the Secretary pronounced a policy on this very issue. And in that 2010 rulemaking, the Secretary declared a distinction between a person who is eligible, an SSI-eligible individual under Title 16. That in itself is not enough to be in the Medicare Act, the Medicare fraction of the DISH provisions. The Secretary said instead that in addition to being an eligible person, the person has to be entitled to receive a monthly payment from the SSI program in order to be counted. In our appeal, we contend that the Secretary's construction is too narrow. The construction the Secretary has utilized and disregards the congressional intent to include all SSI enrollees in the SSI portion of the Medicare fraction. And it's also inconsistent with the decision of the Supreme Court in the Empire case decided last year that concerned a corollary provision, which is entitlement to Part A benefits under the Medicare Act. The statute by its terms defines the entitlement month-to-month. The statute does indeed define entitlement to monthly payment under 1382C. And your theory is that entitlement should be defined by reference to enrollment, which is a 24-month period, which is just the unit by which the agency processes, is the application still on file? I don't think that's the status. We believe it should be maintained. It should be counted by who is an eligible individual under Title 16, which is defined in 1382A. I'm not sure what the 24-month enrollment is that you're referring to. A person can become eligible for Medicare. Your theory is that, maybe I misunderstood it, but I thought your theory was anyone who's enrolled, has filled out the application, gets the benefit, and then income goes up, so that person doesn't get the benefit in the later month, but is still enrolled. That's right. They are still eligible. A person has to apply for SSI, Title 16, Supplemental Security Income Benefits. Okay, but that's the person I'm saying is not eligible under the statute for that month. I would say that they do remain eligible, and this is why under 1382A, Judge, the person is declared by Congress to be an eligible individual for purposes of Title 16. And in C-1, the statute is eligible for the month based on the income determination, which varies month to month. It says that they are then eligible for the monthly payment based upon an income determination that is actually not based upon the person's circumstances in that month, but on a prior month, either one month or two months. Okay, but it's month to month. It is month to month, and it can alter in some circumstances, but the important point is that Congress established who is an eligible individual, and a person does not lose their eligibility under Title 16 because they don't get a monthly payment. They remain a participant in the program. So you want us to read entitlement to be eligibility and eligibility to be a statement in 1382A without reference to the month to month clarification in 1382C-1? Right. 1382C encompasses a variety of circumstances in which a person may qualify for a payment or may not qualify for a payment depending upon individual situations. But it does not undermine the person's continuing eligibility as an SSI program participant. Other, they could be, they could get a payment one month, miss a payment the next month, and then receive a payment in the third month. So although there are payment limitations baked into Title 16, that is akin to the payment limitations that the Supreme Court considered in Empire and said that those do not disqualify a person from inclusion in the Medicare fraction. Empire dealt with an insurance coverage issue, whereas now we're talking about a benefit, and it seems that the Social Security benefits are defined as cash benefits. So I think that that's an important distinction. It's true. Empire is a health, Empire-concerned Medicare Part A, which is health insurance. The Title 16 program is essentially income insurance for the lowest income Americans. It's a safety net program that provides for safety net and financial assistance to those most in need. So it's, it is not health insurance, true, but it does function as essentially income insurance for those people that are most in need. So the agency relies on the statute 1381A to say that these are paid benefits. And also there's a regulation, 20 CFR 416.120, which says, as used in this part, supplemental Social Security income benefit means the amount to be paid to an eligible individual. How do you respond to that? Because if you look at the regulations, 416.200 and on down, but first, what they first established is a person has to apply for benefits and be determined to be eligible, which means that they meet the basic income and resource qualifications for the program. At that point, a person is enrolled in SSI and becomes an eligible person. It then goes on to describe the circumstances in which they can be eligible for a monthly payment. Those are two different steps. And if the person meets the monthly, if they don't meet the monthly payment criteria for a particular month, they remain eligible for SSI. That's what Congress intended in 1382A. I think that's fine, but that doesn't mean that they're entitled to benefits for purposes of this action. They're not entitled to the monthly stipend. That's true. However, there are other benefits that accrue to those individuals as well that remain in place, whether they're receiving the monthly stipend or not. But those other benefits, they're not under Title 16, are they? Some of the benefits are the vocational rehabilitation benefits have been baked into Title 16 since the Vocational Rehabilitation Act of 1973. Remember that 85% or more of SSI beneficiaries are disabled. Disabled individuals qualify to seek voc rehab benefits, and those remain in place whether they're getting the stipend or not. Sorry, I thought, is that the Ticket to Work benefit you're talking about? Ticket to Work is a program. It's in Title 11. It's in Title 11. That was created in 1999. That was a new iteration of voc rehab benefits, but it wasn't the creation of voc rehab benefits. Where would we find vocational rehabilitation benefits in Title 16? In Title 16, I'll provide you with a precise citation on rebuttal. In Title 16, it is still the case that disabled individuals will be paid or are eligible to be paid for vocational rehabilitation benefits even in months in which they don't receive a monthly stipend from the program. So you didn't raise vocational rehabilitation services and Ticket to Work before the District Court, did you? That issue was not raised. However, other program benefits have been raised throughout the course of these proceedings, both before the Provider Board, before the CMS Administrator, and before the Federal District Court. So there are other benefits. For example, Medicare Part D subsidy. All SSI recipients get fully subsidized Medicare Part D coverage by virtue of their enrollment in the SSI program. That also is paid regardless of whether they're getting the monthly stipend or not from the SSI program. So we'll take whatever Title 16 cite you give for us and think about forfeiture and such. But the main other benefits that you rely on are Ticket to Work and automatic enrollment in Part D. But Ticket to Work is a Title 11 benefit and Part D is a Title 18 benefit. So why did those count as being under Title 16? Well, vocational rehabilitation benefits are part and parcel of Title 16. One of the key elements of Title 16 is to return disabled individuals to the workforce. So if you review the regulatory provisions for Title 16, you will find copious information about not only their entitlement to vocational rehabilitation benefits, but also the fact that the agency needs to send them information about the right to seek vocational rehabilitation benefits. It is not correct to think of Title 16 as merely an income support program. One of the key initiatives of Title 16 is to return disabled individuals to the workforce. That's why these income supports come into place. Now, you mentioned again of Ticket to Work. That was created in 1999. And at that point, because Social Security administrators, not just Title 16, but also SSDI. So their voc rehab efforts do encompass both programs. And when they create Ticket to Work, essentially what they were doing was enhancing voc rehab benefits. They weren't creating them, they were enhancing them. The Voc Rehab Act of 1973 is the original source of voc rehab for Title 16. In Ticket to Work, essentially it was an effort to privatize those efforts to help disabled people return to the workforce. So they extended benefits to private companies that would be given a financial incentive to help coach people to get jobs, to give them training, and to then help them find jobs and maintain them. So it's true that's in Title 11, but it's also true that it applies to Title 16 recipients as it does to Title 2 recipients. Does your argument depend on our concluding that there is this vocational rehabilitation benefit above and beyond just the monthly paycheck, the monthly check, and that it is in Title 16? Yes. Our argument does rely upon that, that vocational rehabilitation is an independent benefit within Title 16 that attaches to SSI eligible individuals, those who are disabled. Again, that's 85% of them. But again, there are other benefits as well that accrue to those people based upon their enrollment in the SSI program. They get the Part D benefit. All of them get that by the Secretary's admission. Far more people receive that subsidy than are being counted in the numerator of the Medicare fraction at this time. But if we didn't have vocational rehabilitation, and we didn't have Part D, would you be making the same argument based on 1382A? Yes, sir. And I'd like to explain why, if I could. Even if you were to conclude that the only benefit is the cash benefit, and we would respectfully disagree with that conclusion. I understand. So this is your alternative. Even if you were to conclude that if the cash benefit is the only benefit, in light of the in one month, but may receive it in the month before and the month after, still qualifies them to be counted. Because what Empire said is that limitations on payment do not disqualify a person. And the record before you is undisputed, that when these individuals miss a payment, they are not kicked out of the program. They don't have to reapply for benefits. They remain in the program. If the work enhancement opportunity results in them, making too much money for a month, the very next month, they may not make it. The other thing, they may not make enough so they would qualify. Again, I should say, their benefits are reinstated automatically. The reasoning of Empire, though, was very much dependent upon the statutory context, how that word is used within the Medicare statute. And the statutory context here is very different. It's different. It's true, it's different. It's somewhat different from what we're used to. But you do still have benefits that remain in place, number one, with Voc Rehab and Part D, and for that matter, medical assistance benefits. But you also then have the opportunity, as Empire explained, in a justifying state, counting individuals who have what are called Medicare exhaust days. But the court said in Empire is, if the person has Medicare exhaust days, so Medicare did not pay for that care, the next spell of illness may be covered by Medicare. So if a person on SSI does not receive a monthly payment because they made too much money in their part-time job, they might get, the very next month, they might get that check. The other important thing to remember is the system that is in place right now does not measure the individual's eligibility month by month. The payment computation is based upon data from either one month or two months prior. So the information the Secretary is using is not based measuring the person's financial profile at the time they're hospitalized. So in our view- They definitely do this whole payment at the end of the year anyway, and then they recode for people who change status later. So the Secretary acknowledges in their brief that their current system, I will say that their current system is internally inconsistent and leads to absurd results because number one, as you say, their rationale is don't worry. We are not counting some people who are eligible. They acknowledge that. But we fix it later because we run the data 15 months after the fact. However, in doing that, it disregards the record, which is that many of these disputes about a person's disability or about a dispute about whether payment should have been suspended. It takes years, not months to resolve those kinds of problems are not going to be fixed by running the data 15 months later. The other problem with that rationale is none of the information is shared with hospitals. That is why a mandamus claim is a part of our complaint because the information we need to verify and challenge our calculation has never been given to the hospital. So the government says trust us in terms of we're going to fix that later because they acknowledge they're not counting all eligible people as they do these calculations, but they don't give us the information to test that. Well, you're asking for the code information and they don't have the code information. SSA has. But they receive they receive the data from SSA. Not not in that form, though. But the secretary. Go ahead. I'm sorry. Respectfully, the secretary can get the information it needs from SSA because they're getting it now. They can direct SSA. It's the secretary's duty to get the appropriate data information from Social Security Administration. So I think the secretary is getting what they think is necessary, but they're not getting what you think is necessary. And they're not sharing any of the data with But they're not getting additional information that you think is necessary. But the data they share is not adequate under the Medicare Modernization Act because we are supposed to be able to verify and challenge the dish calculation. None of the codes, either for the patients they're counting or for any other patients are ever provided to hospital. Clothes are not provided to the HHS. SSA gives it to them in a different form. I believe that you're asking them to give you information they don't. But they it's within their control to obtain the information. It's within their obligation to obtain the information. All right, Mr. Miller, we'll give you a couple of time, a couple of minutes and reply. At this point on rebuttal, rebuttal. Thank you. Miss Marcus. Thank you, Your Honor. Good morning. Put that microphone down or the podium. Is this better? Can you hear me now? Okay, thank you. Good morning. I'm Stephanie Marcus from the Department of Justice, and I represent the Secretary of HHS. In this case, the district court properly upheld the Secretary's interpretation of entitled to SSI benefits under Title 16. That interpretation best reflects the plain language of the statute in the context of the benefits program to which it that distinguish it from the Medicare program that was addressed. And one of the main ones is that the SSI program is a cash benefit program that does vary. And so that a benefit varies and eligibility or entitlement to that benefit varies from month to month based on income and resources. That's different from Medicare, which is an insurance program. And you are covered by the insurance. And that is once you reach age 65, as the Supreme Court said, that's a status based benefit. It doesn't change. Your friend says there's a vocational rehabilitation benefit in Title 16. I had sort of written off ticket to work because it's in Title 11. But I want to address I know you're in the dark here because we don't have a site. But what's your understanding? We do have only one statutory site in the opening brief, which we refer to on page 35 of our brief. It's in footnote five, and the sole site plaintiff had. I'm sorry, what page? This is on page 35. Of the red brief? Of the red brief. It's 1382 D? Yes. I'm sorry, which title is that? Oh, that that is the only I believe that is Title 16, but it applies to referrals by the commissioner of individuals under age 16 to the appropriate state agency administering the state program and allows for reimbursement to such state agencies. So we are relying on what Congress said the basic entitlement under Title 16 is, and that's set forth under 42 USC 1381 A. And it refers to benefits paid by the commissioner that and then the plaintiff also referred to a number of regulations about vocational rehab services, but those need to be looked at in context of the secretary's longstanding Title 16 regulation under Title 16, which has been pointed out defines supplemental security income benefit means the amount to be paid to an eligible individual. So this and there's a ticket to work provision that we cited that also defines the Title 16 benefit means a cash benefit. We have that site in a brief for purposes of the section in title. Yes, but I mean, that's so we have the Title 16 provision itself. A provision from the ticket to work program that also applies to vocational rehabilitation services and a 19th regulation from the 1970s and all the court needs to do is determine that secretary's interpretation is at least permissible here. And we submit that because of the nature of the SSI benefit program, the interpretation is entirely consistent with the Supreme Court's Empire decision. Can we talk about cross program recovery? That seems to be a little unclear in the record. Do you know how that's coded? Your Honor, and we will, as we said in our brief, we don't think that's really properly considered in this case, but we did after more discussion of it in plaintiff's reply brief, we did inquire with Social Security and our understanding from Social Security is the code remains the same. So if the person. This is E-101, sorry. It's not E-01. As we said that, if someone has a payment, is entitled to a payment, that's the only way you could get cross program recovery. So it's included within C-01, M-01 or M-02. And yes, that's our understanding from Social Security. And we also would refer to the statute cited by plaintiffs about cross program recovery itself shows that the agency, if they're going to do the cross program recovery, which I think, again, I don't think applies to any of the patients in this case. And it wasn't, you know, it's not relevant to the rulemaking or the actual statutory interpretation. But putting that aside, they go, they would only take the lower of 10% of the person's income or the benefit. And because the benefit is included in the person's income, our understanding is that they just didn't know of any cases where the whole benefit would be taken anyway, or it would be rare. Because, so I guess you're saying that, I see, yeah. Are you saying that it's, they don't know of any cases where it's reduced to zero. And if it's reduced only somewhat, then it would be a payment. It theoretically could be, but they also said that the code remains the same. Meaning it's within CO1 or MO1 or MO2. And again, as we noted in our brief, the EO1 doesn't, it wouldn't be logical in that situation because EO1 is when the person isn't, you know, entitled to a payment for that month, either because the application has not become effective. And those people are not entitled to a payment and that application is yet another reason that this is distinguishable from the Medicare program. You have to apply. Just being an eligible individual under the standards isn't enough unless you actually apply and your application is granted. And the other one is if the person is in a medical facility and there's a limitation on payments for that. And if the income exceeds that, they're not entitled to a payment. So that person wouldn't have anything to recover from and across the program. So, so sorry, just to make sure I got this. You, you are representing to us that a person who is entitled to a payment in a particular month and doesn't get it because of this clawback thing. Okay. And we are not aware of any. Would not be coded, would not be coded in EO. That, that is our understanding, Your Honor. But again, I don't think you need to. I mean, I thought that's what you were saying in your brief, but it wasn't that clear. Well, it's because it's not in the record. It's not properly in the record in this case because there's no, the program was not, in this case, plaintiff hasn't developed any examples of this happening. And because our understanding is also that it is virtually always going to be limited to that 10% of income and that person will still get a payment for the month. It just might be reduced. Yeah, then it would still be CO1, but it would be a lesser amount. And when you confirmed with the SSA before argument, did you ask them about EO1 or? We, we asked them about what, what the code, would it change the code if, if in the class recovery program. And again, this was just in discussions, you know, but, and this is our understanding. And I think, you know, there's, again, if you look at what EO1 means, it makes sense. That's what we said in our brief. And I don't, this case is about the reasonableness of the secretary's interpretation and how the secretary interprets the statutory language that this plaintiff isn't asking to go back and look at, you know, what happened to individual patients or anything. And here we are saying that. Most, it's mostly about that, right? But they have a fallback argument that even under your interpretation, their coding doesn't operationalize things in the right way because they put people in EO1. Right. And we would refer the court and to the rulemaking where the secretary went through in the rulemaking on addendum page 18, the secretary addressed a number of codes that commenters had brought up in the rulemaking and the secretary went through and explained what those codes were and said why they weren't within the statutory interpretation of entitled SSI benefits under Title 16. And that's because under the secretary's interpretation, it means entitled to receive a cash benefit while the individual is in the hospital. And as plaintiff acknowledges, there are, that also, that doesn't mean that the person actually has to get the cash that month. There is, as the rulemaking shows, a 15-month period where SSA may be developing, you know, why the person, you know, there could be an appeal, they may be figuring out whether the person actually is eligible, and they will retroactively change the code. And so it's just whether they're looking at the HHS in determining the disproportionate share percentage is looking at whether the person was entitled to receive payment that month, not whether he or she actually got a payment. Can I ask, so suppose we agree with you that enrollment is not sufficient, but you have to look to entitlement to the cash benefit on a month-by-month basis. But I still wonder whether, and that means your opponent's interpretation is wrong, but under your interpretation, you don't count people who are unenrolled for whatever reason, but who meet all of the status-based and income-based requirements for the program, someone who's elderly, someone who's disabled and has no income, right? And they just haven't gotten around to enrolling. Wouldn't we say in plain English, like, that person is entitled to the benefit, and it just hasn't filled out the paperwork? No, Your Honor. And isn't that person the kind of person Congress had in mind, because that person is poor and has the health complications that come with it, which is what drives this fraction? Um, Your Honor, I think that question actually points out the problem with plaintiff's interpretation about, you know, anyone eligible or enrolled but not actually entitled to receive the benefit for the month should be included. And the statute itself shows that that's not what Congress intended to be entitled to the who is determined under Part A to be eligible. So that also refers to Part 42 U.S.C. 1382 C.7, which is it's a statutory, not a regulatory requirement that the person apply. So I would submit that Congress didn't think a person in, you know, just someone who's sort of eligible in the out in the air. I mean, I see that. But on the other hand, it's not applying, you know, in some competitive process, you know, applying to an elite college or something. You submit the application, and it seems pretty pro forma. C.7 says the application is effective on the first day of the next month after you've become eligible and applied. Just seems like this is a matter of paperwork. And just one other thought on that, which is just sort of the concept, the concept of entitlement. This in this program, Congress appropriates whatever funds are necessary to meet the program, which often is associated with the word entitlement. Well, Your Honor, I think with the application, it's not because of the income and resource limitations. And there are issues, you know, such as your spouse's income and resources count in that too. And there are a lot of inquiries the agency needs to make and in determining whether the person actually is eligible. So even someone who may think he is, you know, under the income limit, if his wife owns some, you know, a piece of property that would disqualify them, then, you know, that I mean, it is it's not pro forma. And it is the entitlement to the actual cash benefit wouldn't actually vest until the application. And if there are no further questions, we'll just rest on a brief on the mandate. Thank you. All right. Thank you, Mr. Miller. Why don't you take two minutes? So the citation you were looking for is 42 U.S.C. 1382-H. 1382-H? Yes, sir. Okay. We'll check it later. Thank you. The Secretary's interpretation of the statute translates two terms, eligible and entitled. And in case after case, that distinction has been rejected. It's true, but so does 1381-A, whose title is basic entitlement to benefits and all of whose text talks about eligibility. Indeed. And as Judge Henderson observed in the Hall case in this circuit, those two terms are synonymous. Those two terms are synonymous, eligibility and entitlement. In the Supreme Court case of Empire, they rejected Empire Health Foundation's attempt to try to draw a distinction between eligibility and entitlement. What the court said in Empire is that if you meet basic program qualifications, you should be counted in the disfraction. And in this case, what that means is the court should follow the congressional definition of who is an eligible person for purposes of this title, which is in 1382-A. The Secretary acknowledges that he is not doing that. He is taking a subset of those individuals. Only those who receive the monthly payment are being counted. And so with, if I have 40 seconds left, what I would say is the system that is currently in place is arbitrating increases as the terms are used under the Administrative Procedure Act. Because again, the decision is being based upon the individual's financial profile from one or two months prior to the date of hospitalization. The system that they're currently using counts three codes, two of which include people who are not eligible for payment, and many of the codes being excluded are for people who are in fact eligible for payment. So in our view, the system that they have in place should not stand. It's also to us the idea that they're using a subset of people for purposes of the Medicare fraction numerator, but all SSI enrollees receive the Part D benefit. It's another illustration that it's not a reasonable interpretation of the statute. Are there other questions for me? I don't think so. Thank you. Thank you very much.
judges: Henderson, Katsas, Pan